**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| In re: A. Johnson Conditional Use Permit | } | Docket No. 130-7-05 Vtec |
| (Appeal of Langrock and Decker) | } | |

## Merits Decision

This appeal concerns conditional use approval of a proposed sand and gravel extraction operation on a 33-acre parcel owned by Applicant A. Johnson Company ("A. Johnson") on Upper Plains Road in Salisbury. A. Johnson is represented in this proceeding by Karl W. Neuse, Esq.; the Town of Salisbury ("Town") is represented by Donald R. Powers, Esq.; Appellants Peter F. Langrock and Dawn Decker represent themselves in this proceeding, as do Interested Persons Carol Wieland and Margaret "Julie" Dawson.

As was noted in this Court's Interim Decision of March 28, 2006, this case has a longer procedural history than its single docket number suggests. An appeal and cross-appeal were first taken from the November 13, 2003 Decision of the Town of Salisbury Development Review Board ("DRB") to grant conditional use approval for this same project. See In re: Appeal of The A. Johnson Company, Docket No. 220-12-03 Vtec (Vt. Envtl. Ct., Dec. 23, 2004). In its 2004 Decision, this Court remanded the application back to the DRB for further consideration, specifically in relation to Condition 13 of that Decision (which related to the imposition of impact fees), taking into account the truck traffic expected to be generated by the proposed project. After remand, the DRB conducted an evidentiary hearing and issued its June 20, 2005 Decision, granting conditional use approval for the proposed project, with revised impact fees specifically tied to truck traffic.

Appellants Langrock and Decker, owners of abutting residential properties, filed a timely appeal of the June 20, 2005 DRB Decision, preserving for appeal two issues: first, whether a rock crusher may be used within the proposed project and second, whether the proposed hours of operation are unreasonable.

A. Johnson filed a cross-appeal, raising eight issues, most all of which relate to the DRB's re-imposition of impact fees.[1]  Prior to trial, A. Johnson and the Town reached an agreement as to the imposition of impact fees; their settlement was reduced to writing and entered into evidence at trial as Exhibit 4.  The settlement was ratified by the Salisbury Selectboard, as required by paragraph 4 of the Agreement.  It was not agreed to or accepted by any other party to this appeal.

As an initial legal issue, we note that even though A. Johnson reached agreement with the Town on all issues raised by its cross-appeal, other parties to this proceeding may raise issues within the confines of A. Johnson's cross-appeal, given that those remaining parties did not join in that settlement.  Even when an original appellant withdraws its appeal, through settlement or otherwise, intervening parties may continue to prosecute the appeal, within the confines of the original statement of questions.  In re Garen, 174 Vt. 151, 153–4 (2002).

While the remaining parties had the right to prosecute issues raised in A. Johnson's original Statement of Questions,[2] their presentation at trial was solely focused on the two issues raised in Appellants' Statement of Questions:  the rock crusher and hours of operation.  We therefore render the following findings of fact in connection with those two issues.

### Findings

1.     A. Johnson owns a parcel of undeveloped land containing about 33 acres off of Upper Plains Road.  This A. Johnson parcel does not have frontage on Upper Plains Road, but is served by an "access & woods road" that crosses over lands owned by the Town and also accesses the Town Landfill.

2.     The A. Johnson parcel is located entirely within the Low Density Residential Zoning District ("LDR District").

3.     The A. Johnson parcel includes an access way onto Beaver Pond Road that runs along the easterly boundary of Appellant Langrock's residential property.  A. Johnson does not intend to use this access way for its proposed project.

---

[1]  A. Johnson appears to raise other issues in its Statement of Questions, including whether the Town had authority to set the Zoning Administrator's fee at $200.00 (Question 4).  However, we understand from the parties' Settlement Agreement that the intent was to resolve all issues raised by A. Johnson's cross-appeal, at least as between the Town and A. Johnson.

[2]  A. Johnson didn't file a separate Statement of Questions, but rather included its Questions in the Notice of its cross-appeal, filed on July 14, 2005.

4.     A. Johnson proposes to extract approximately 350,000 cubic yards of sand and gravel from its parcel along Upper Plains Road. The area from which sand and gravel would be extracted is about 5 acres in size and located along A. Johnson's southern boundary, where the parcel abuts the Town Landfill.

5.     The remaining land on this A. Johnson parcel, estimated at about 28 acres, is mostly wooded and would remain so during the life of the pit.

6.     In its original application for conditional use approval, A. Johnson requested permission to extract and remove from the site up to 30,000 cubic yards of sand and gravel per year. A. Johnson estimates that the 5 acre pit will yield marketable sand and gravel for the next 10 to 15 years.

7.     Work is proposed to commence at the pit each weekday at 7:00 AM and end at 5:00 PM, with public access from 7:30 AM to 3:30 PM. Work may also occur on Saturdays from 7:00 AM to 12:00 Noon, but will not be open to the public on Saturdays. The pit would be closed, both to workers and the public, on Sundays and holidays recognized by the state or federal governments.

8.     The proposed sand and gravel pit would operate on a seasonal basis for about 200 to 250 days per year, opening in the spring and closing in the late fall or early winter of each year.

9.     There is no blasting planned or authorized at the proposed pit.

10.    Some of the extracted rock will be larger than is needed for A. Johnson's customers, particularly state and municipal entities. A. Johnson intends to use a portable rock crusher on site to reduce the extracted stone to the needed sizes.

11.    The portable crusher would be brought to the proposed pit by its operator, Paquette Excavating, Inc., which is a co-applicant with A. Johnson in this proceeding. Emile J. Paquette, president of Paquette Excavating, Inc., testified at trial about his experience with portable rock crushers, such as the crusher proposed to be used at this A. Johnson pit.

12.    Oversized rock would be stockpiled in the pit to be broken up to usable sizes by the crusher. The rock crusher would be brought on site for use for about ninety days[3] during the season that the pit is operating. It would take about one day to set up the portable crusher in the pit, and about one day to pack it up to move to another location.

---

[3] The ninety days the portable crusher would operate at this pit would not necessarily be sequential; it would depend on the amount of excavated rock that needed to be crushed. The portable crusher could arrive at and leave from this pit several times during each operating season.

13. Once assembled on site, the crusher is about eleven feet wide and sixty feet long. It has a screener on it to initially separate different sized stone; another screener of about forty feet long is attached to the crusher screener to further assist in separating stone by size. The crusher breaks up rock to certain sizes directed by state specifications for roads, ditches and the like.

14. Oversized rock will be delivered from within the pit to the crusher by two wheeled loaders. After the rock is crushed, two conveyors, each a couple of feet wide and forty feet long, will take the crushed product away from the crusher. Excavators would also be used in the pit to load the excavated or crushed material and to dig and shape the pit.

15. Operators of the crusher often use ear plugs or other ear protection. No specific audio readings of the noise the crusher and excavation equipment would emit, particularly at the A. Johnson boundaries, was admitted into evidence. Mr. Paquette testified, and the Court finds credible, that he once operated a similar crusher near a school in Bristol, Vermont for fifteen years, and "never had a complaint" about it.

16. Every time the portable crusher is moved it is calibrated and inspected by officials from the U.S. Bureau of Mines.

17. The sand, gravel and crushed rock extracted from the proposed pit will be loaded into 14 yard dump trucks. These trucks would travel south on Upper Plains Road to Route 53 for ultimate access to Vermont Route 7.The trucks would average ten round trips per day during the operating season. A. Johnson has agreed that its trucks would not use the pit access that leads to Beaver Pond Road, nor use that road, except for the limited purpose of delivering sand or gravel to properties along Beaver Pond Road.

18. Because of the operating times for the pit, trucks loaded with sand, gravel or crushed rock would sometimes be traveling on Upper Plains Road while children were being transported to and from school.

19. There are about sixteen school-aged children living along Upper Plains Road in the vicinity of the A. Johnson pit.

20. While concerns were expressed about the truck traffic from the pit, particularly since the trucks would be operated during the times children are being brought to and from school, there was no evidence of the specific dangers the operation of the A. Johnson trucks would bring to the area. Upper Plains Road, particularly in the vicinity of the A. Johnson pit, is a rural road of sufficient width and condition to not be adversely impacted by the truck traffic estimated to be

generated by the A. Johnson pit. Anecdotally, there was no evidence revealed at trial of difficulties with the trucks that travel to and from the Town Landfill on Upper Plains Road, even though the Landfill has been in operation for a number of years.

21. No aspect of the proposed excavation plans or reclamation plan were preserved for review by this Court in this appeal.

## Discussion

The Court interprets the Settlement Agreement entered into between A. Johnson and the Town, admitted at trial as Exhibit 4, as a request by those parties to resolve the issues presented by A. Johnson's cross-appeal by acceptance of the terms of that Agreement. The Settlement Agreement speaks principally to issues surrounding the legality of assessing impact fees on this specific project and the appropriate level of impact fees. In essence, the Settlement Agreement recommends that the DRB Decision of June 20, 2005 be affirmed, with revisions to Condition 13 relating to impact fees.

As noted above, the Garen precedent allows other parties to an appeal to prosecute the appeal, even when the original appellant has withdrawn or otherwise chosen not to proceed with the appeal. Here, we have a recommendation from both the Town and the Applicant as to how the Court should resolve all issues raised by A. Johnson's cross-appeal. While the other parties did not join in this Agreement, neither did they offer any evidence at trial challenging the terms of the Agreement. Thus, the only evidence before us as to impact fees is that presented by A. Johnson at trial in support of the legality of imposing impact fees, and the specific mechanism for assessing and re-evaluating the calculation of impact fees during the anticipated life of this sand and gravel pit.

The Town and A. Johnson followed the recommendation of this Court in its remand order of December 24, 2004. See In re: Appeal of The A. Johnson Company, Docket No. 220-12-03 Vtec (Decision and Order on Pending Motions) (Vt. Envtl. Ct., Dec. 23, 2004). The Town adopted interim zoning bylaws to correct the deficiency identified by this Court in its previous bylaws relating to the assessment of fees on specific projects that are expected to have a measurable adverse impact upon highways or other municipal resources.

While the Court's remand appears to speak only to Condition 13 in the prior DRB Decision of November 13, 2003, the DRB crafted its subsequent Decision of June 20, 2005 as both a refinement of the impact fees assessment, after adoption of the interim zoning bylaws, and

a "reissue" of all other conditions to its prior conditional use approval of the proposed project. See DRB Decision of June 20, 2005 at pp. 4–6 and compare conditional use approval Conditions 1–12, 14 and 15 with identically numbered conditions of approval in the DRB Decision of November 13, 2003. Thus, we conclude that the DRB crafted its June 20, 2005 Decision to supersede its prior Decision. While the DRB was not specifically directed to do so by this Court's December 23, 2004 Decision, we conclude that the process followed by the DRB was proper and led to the efficient procedural result that we now have just one decision—the June 20, 2005 Decision—at issue regarding this proposed project.

In light of the evidence submitted at trial in support of the impact fees that are now jointly recommended by the Town and A. Johnson, and the lack of evidence presented at trial contravening the suggested impact fees, we find that the suggested revised impact fees are proper. We therefore adopt the revised Condition 13 suggested by the Town and A. Johnson.

We now turn our focus to the two issues raised by Appellants: the propriety of the proposed rock crusher and hours of operation. We also note that to the extent that terms of the June 20, 2005 DRB Decision were not preserved for our review in this appeal, they are outside this Court's jurisdiction; they have become the law of the case by virtue of not being appealed. In re Appeal of Jolley Associates, 2006 VT 132 ¶ 9. Thus, we turn our focus, not to the application generally, but to the portions of the DRB's conditional use approval that were preserved for our review by Appellants' Statement of Questions. We address each of them in turn.

## 1.     The Rock Crusher.

Appellants assert in their first Question that the rock crusher proposed to be used in the operation of this sand and gravel pit is a "manufacturing device and is not a permitted use under the Salisbury Zoning Regulations." Appellants offered no citation to the authority for this legal conclusion and we find none after our own search through the Salisbury Zoning Regulations ("Regulations"). We therefore decline to base a denial of the pending application on this point.

The term "manufacturing device" is not a term that is defined in the Regulations. See Regulations § 130. Surface mining, gravel extraction and quarrying activities are permitted in the LDR District, but only once the proposed project has received conditional use approval. Regulations § 930. We conclude that the sand and gravel pit A. Johnson proposes here can

properly be described as a "surface mining, gravel extraction and quarrying" operation, as that term is used in Regulations § 930.

The evidence presented at trial confirmed the Court's general understanding that some sand and gravel pits employ rock crushers and some do not. The operation proposed here employs a "portable" rock crusher that will be used for about one-third of the days that the pit is in operation each season.

When attempting to determine the meaning of an ordinance or statute, we are directed to seek out its "fair and reasonable construction." Langrock v. Department of Taxes, 139 Vt. 108, 110 (1980), citing Holbrook Grocery Co. v. Commissioner of Taxes, 115 Vt. 275, 278 (1948). We are also advised to look to the more specific provision for the controlling language when interpreting provisions of a statute or ordinance. See Judicial Watch, Inc. v. Howard Dean, MD, et. al., 179 Vt. 214, 217 (2005), citing Stevenson v. Capital Fire Mutual Aid Sys., 163 Vt. 623, 625 (1995) (mem.). Thus, we conclude that the proposed sand and gravel project is governed by the specific provisions of Regulations § 930 and not more general provisions within the Regulations that govern manufacturing.

Regulations § 342 governs the approval of all conditional uses in Salisbury. Only some of the provisions of Regulations § 342 are applicable to sand and gravel extraction operations such as proposed here; those that are applicable are further narrowed by what issues the Appellants preserved for our review in this particular appeal. In regards to the proposed rock crusher within this A. Johnson pit, we conclude under Regulations §§ 342.6 and 342.7 that the evidence presented did not show that the crusher, if operated as proposed, would have an adverse impact upon the character of the area or adjoining uses. Within the context of the proposed sand and gravel pit and its siting within the wooded area of A. Johnson's remaining land, the use of the crusher as proposed is not inappropriate and will not have an adverse effect on the continued use and enjoyment of the approved uses in its vicinity. We therefore decline to deny the pending application on this basis.

## 2. Hours of Operation.

The hours A. Johnson and its co-applicant, Paquette Excavating, Inc. propose to seasonally operate the proposed gravel pit have remained constant through the proceedings on this application. A. Johnson has not proposed alternative hours of operation; nor have any of the other parties to this proceeding. The proposed hours of operation appear to coincide with the

general hours of operation, in this Court's experience, of similar operations and the customers that frequent sand and gravel pits, including state and local highway maintenance and construction crews.

As with the proposed rock crusher, we view the question presented as whether the proposed hours of operation will have an adverse impact upon the character of the area or the authorized uses adjoining the A. Johnson property. Many expressed concern about the possible danger of empty or loaded A. Johnson trucks driving along Upper Plains Road at the same time that children are being brought to and from area schools. Any collision between one of these trucks and a vehicle transporting school-aged children would be a calamity, but there was no evidence presented that the increased truck traffic caused by the proposed pit would materially increase the risk of injury to area children. In fact, there was no evidence presented at trial that the long operational history of the adjoining Town Landfill, which the evidence revealed was occasionally used to extract sand and gravel, had resulted in any increased danger to area children. We therefore conclude that the evidence presented supports our conclusion that the truck traffic generated by this pit, if operated as proposed, is not likely to create such adverse impacts. We therefore decline to deny the pending application on this basis as well.

## Conclusion

For all these reasons, we conclude that A. Johnson's proposed sand, gravel and crushed rock project should be **APPROVED** as a conditional use under Regulations § 930, subject to the following revised Condition 13:

13. An impact fee of $0.13 (thirteen cents) per cubic yard of sand and gravel removed from the pit is hereby imposed on the Applicant. Said fee, payable to the Town of Salisbury, is to be calculated on a calendar-quarter basis and paid to the Town on the 15th of each January, April, July and October. The proceeds of said payments are to be set aside in an account to be used only for the repair and maintenance of Route 53 from its junction with Route 7 to its junction with Upper Plains Road and Upper Plains Road between the right of way and Route 53. At the end of the fifth and tenth years of operation (and every five years thereafter, if any), at the option of either the Town or Applicant, the impact fee shall be redetermined based on:

a. Updated traffic counts on Route 53 and Upper Plains Road. The traffic counts shall be taken by Addison County Regional Planning Commission, or any other person or entity approved by both Applicant and the Town, on or about January 15 and July 15 following or preceding expiration of the fifth and tenth years. Applicant will reimburse the Town for half of the costs of such traffic

counts. The data for January and July will be averaged to determine traffic loading without Applicant's trucks.

b.  Annual road maintenance prices will be updated based upon then current costs.

c.  The annual percentage of traffic loading caused by Applicant's trucks will be based on then-current use data from the log to be maintained under paragraph 7, above.

d.  The redetermined impact fee will be applied on the fifth and tenth anniversaries (and every five years thereafter, if any) from the date of commencement of operation.

e.  Applicant will give the Town Select Board written notice of commencement of operations within 10 days after such date of commencement.


This completes the current proceedings on this appeal before this Court; the matter is now concluded. This matter is **REMANDED** to the Town Zoning Administrator to complete the ministerial act of issuing a conditional use permit that incorporates the terms of this Decision and the unappealed portions of the DRB Decision of June 20, 2005.

A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 13th day of March, 2007.


_____
Thomas S. Durkin, Environmental Judge